# EXHIBIT 6

## SETTLEMENT AGREEMENT WITH GENERAL AND LIMITED RELEASES

This Settlement Agreement with General and Limited Releases (the "Settlement Agreement") is made and entered into effective July 13 2015, by and among:

(i) Brian Weiss, solely in his capacity as the Liquidation Trustee (the "Trustee") of the Liquidation Trust (the "Liquidation Trust") of Walldesign, Inc. ("Walldesign"), the successor to the chapter 11 bankruptcy estate of Walldesign (the "Walldesign Estate");

(ii) Michael Ru Bello ("Michael Bello"), individually, in his capacity as the trustee of the Bello Family Trust, January 14, 1997 (the "Bello Trust"), as the trustor of the Irrevocable Michael Bello 2012 Trust, dated December 19, 2012 (the "Michael Bello Trust") and as the legal successor to and representative of the estate of decedent Josephine Bello; Nancy Ann Bello ("Nancy Bello"), individually and in her capacity as the trustee of the Bello Trust and as the trustor of the Irrevocable Nancy Bello 2012 Trust, dated December 19, 2012 (the "Nancy Bello Trust"); Christopher Jon Bello ("Christopher Bello"), individually and as a beneficiary of the Bello Trust, the Michael Bello Trust and of the Nancy Bello Trust; Stephen M. Bello ("Stephen Bello"), individually and as a beneficiary of the Bello Trust, the Michael Bello Trust and of the Nancy Bello Trust; Bello Construction Company, LLC ("Bello Construction"); Bello Family Vineyard, LLC ("BFV"); Imperial Building Group, Inc. ("IBG"); MB Investment Group, LLC ("MBI"); Michael Bello, LLC ("MB LLC"); and RU Investments, LLC ("RUI") (all of the foregoing in this ¶ (ii) are hereinafter referred to collectively as the "Bello Defendants"; Michael Bello, Nancy Bello, Christopher Bello and Stephen Bello are hereinafter referred to collectively as the "individual Bello Defendants"); and

(iii) Premier Trust, Inc. ("Premier Trust"), solely in its capacity as trustee of the Michael Bello Trust and of the Nancy Bello Trust.

The Bello Defendants, Premier Trust and the Trustee are hereinafter referred to collectively as the "Parties" and singularly as a "Party." The Parties hereby stipulate, represent and agree (as applicable) as follows:

## RECITALS

A.  On January 4, 2012 (the "Petition Date"), Walldesign filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) in the United States Bankruptcy Court for the Central District of California, Sana Ana Division (the "Bankruptcy Court"), thereby commencing the Walldesign Bankruptcy Case.

1

**EXHIBIT 1**
**21**

B.  On January 26, 2012, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") for the Walldesign Estate.

C.  On May 13, 2013, the Bankruptcy Court entered an *Order Approving Stipulation Granting Leave, Standing and Authority to the Official Committee of Unsecured Creditors to Commence, Prosecute and Settle Certain Claims of the Debtor's Estate* (the "Standing Order") [Main Case Docket Nos. 551 and 791]. Pursuant to the Standing Order and 11 U.S.C. §§ 1103(c)(5) and 1109(b), the Committee was authorized to commence adversary proceedings against Walldesign's insiders, their family members and entities owned or controlled by or related to such insiders to, among other things, set aside and recover fraudulent and preferential transfers. On December 2, 2013, the Bankruptcy Court entered an *Order Approving Amended Stipulation Granting Leave, Standing and Authority to the Official Committee of Unsecured Creditors to Commence, Prosecute and Settle Certain Claims of the Debtor's Estate* (the "Amended Standing Order") [Main Case Docket Nos. 922 and 980]. Pursuant to the Amended Standing Order and 11 U.S.C. §§ 1103(c)(5) and 1109(b), the Standing Order was expanded to insure that it encompassed all possible actions and parties related to Michael Bello or the "Bello Causes of Action" as defined in the Stipulations on which the Standing Order and the Amended Standing Order were based, including potential claims and causes of action against third parties who may have received transfers for the benefit of Michael Bello or other affiliates or insiders of Walldesign.

D.  Based on the Amended Standing Order, the Committee commenced and the Trustee continues to prosecute those adversary proceedings against persons who are not parties to this Settlement Agreement (the "Non-Insider Adversary Proceedings").

E.  On December 19, 2013, the Committee filed a complaint (the "Complaint") commencing an adversary proceeding entitled *Official Committee of Unsecured Creditors v. Michael Ru Bello, et al.* (the "Adversary Proceeding"), Adv. No. 8:13-ap-1409-CB, in the Bankruptcy Court, asserting numerous claims for relief against the Bello Defendants and Premier Trust seeking to recover damages in excess of $18,000,000.00. On May 7, 2014, the Bello Defendants answered the Complaint and on July 24, 2014 filed amended answers to the Complaint, in each instance denying all of the material allegations asserted against them and asserting affirmative defenses.

F.  Premier Trust did not answer the Complaint. On September 12, 2014, the

2

Committee and Premier Trust entered into a *Stipulation for Dismissal Without Prejudice of Defendant Premier Trust, Inc.* [Adv. Docket No. 234]. Pursuant thereto, on October 1, 2014, the Bankruptcy Court entered its *Order on (1) Motion of Premier Trust, Inc. as Trustee, to Dismiss Under Fed.R.Bankr.Pro. 7012 and Fed.R.Civ.Pro. 12(b)(6); and (2) Stipulation for Dismissal Without Prejudice of Defendant Premier Trust, Inc.* [Adv. Docket No. 237], thereby dismissing the Complaint solely as to Premier Trust without prejudice.

G.  On November 6, 2014, the Bankruptcy Court entered an *Order Confirming Debtor's and Creditors' Committee's Amended Joint Chapter 11 Plan of Liquation [Dated August 19, 2014]* [Main Case Docket No. 1468]. As a consequence thereof, Brian Weiss was named as the Liquidation Trustee of the Liquidation Trust of the Walldesign Estate and succeeded to the rights of the Committee to prosecute the Complaint.

H.  The Parties now desire to resolve and settle disputes and claims among as specified in this Settlement Agreement.

I.  This Settlement Agreement is made in good faith and in an arm's-length transaction among the Parties.

## AGREEMENT

NOW THEREFORE, in consideration of the foregoing Recitals and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties each agree as follows:

1.  **Incorporation of Recitals**

Recitals A through I are incorporated into and made a part of this Settlement Agreement.

2.  **Bankruptcy Court Approval**

a.  This Settlement Agreement is conditioned upon and subject to approval by the Bankruptcy Court. As soon as reasonably practical after the timely receipt of the signed Settlement Agreement, the Trustee will file a motion for the approval of this Settlement Agreement (*i.e.*, the "Approval Motion") in the Bankruptcy Court.

b.  Except as provided in ¶¶ 2.a above and 2.c and d, 10 through 12 (excluding 12.a.(i), (ii) and (iv)) and 14 through 27, inclusive, below, or as otherwise agreed to in writing by the Party(ies) to be charged thereby, the Parties shall have no rights, duties or obligations under this Settlement Agreement unless and until (i) the Bankruptcy Court enters an order (the

3

"Approval Order") that, in substance (A) approves all of the terms of this Settlement Agreement; (B) determines that this Settlement Agreement was made in good faith in an arm's-length transaction; (C) determines that adequate notice of the hearing on the Approval Motion was given; (D) authorizes the Parties to perform the terms of this Settlement Agreement; and (E) reserves jurisdiction to enforce the terms of this Settlement Agreement; and (ii) the Approval Order becomes a Final Order. The Approval Order does not become a "Final Order" unless and until the later of (i) the time to file a timely appeal under Fed. R. Bankr. P. 8002 from the Approval Order passes and no such timely appeal is filed; or (ii) if a timely appeal is filed, then after all timely filed appeals are dismissed with prejudice or the Approval Order is affirmed on appeal and is not subject to further timely filed appellate review, whether by appeal, petition for rehearing, petition for certiorari or otherwise.

c. If the Approval Order is reversed upon reconsideration or on appeal, this Settlement Agreement shall automatically terminate and be of no further force or effect and the Parties shall be as they were before this Settlement Agreement was signed, except as provided in ¶¶ 10 through 12.a.(iv) and 14 through 27, inclusive, below.

d. At any time within 90 days after a timely notice of appeal of the Approval Order is filed and that appeal has not been dismissed, the Trustee, but no other Party, may terminate this Settlement Agreement by written notice given to the other Parties, and this Settlement Agreement shall be of no force or effect, and the Parties shall be as they were before this Settlement Agreement was signed, except as provided in ¶¶ 10 through 12.a.(iv) and 14 through 27, inclusive, below.

3. Intended Nonexclusive Sources of Settlement Consideration

a. The intended nonexclusive sources of the settlement consideration payable pursuant to this Settlement Agreement shall be from the Bello Defendants' sale of three real properties (collectively, the "Bello Properties"; or, singularly, a "Bello Property"), as follows: (i) the real property described on **Exhibit 1** to this Settlement Agreement and commonly described as 8424 St. Helena Highway, Napa, California 94558 and known as the BFV residence, including all buildings, vineyards and other improvements located at that property (collectively, the "BFV Property"). Premier Trust, the trustee of the Michael Bello Trust and the Nancy Bello Trust, the legal owners of the BFV Property, and the Bello Defendants shall fully cooperate with the Trustee in listing, advertising, showing, and offering for sale and

4

selling such property; (ii) the real property described on **Exhibit 2** to this Settlement Agreement and commonly described as 929 Main Street, St. Helena, California 94574 and known as the BFV tasting room, including all improvements located at that property (the "BFV Tasting Room"). Christopher Bello, the legal owner of the BFV Tasting Room, and the other Bello Defendants shall fully cooperate with the Trustee in listing, advertising, showing, and offering for sale and selling such property; and (iii) the real property described on **Exhibit 3** to this Settlement Agreement and commonly described as 78759 Platinum Drive, Palm Desert, California 92211, including all improvements located at that property (the "Palm Desert Residence"). MBI, the legal owner of the Palm Desert Residence, and the other Bello Defendants shall fully cooperate with the Trustee in listing, advertising, showing, and offering for sale and selling such property.

    b.    Each of the Bello Properties shall be listed for sale through Coldwell Banker Real Estate LLC, or its affiliates, on such terms and conditions as shall be acceptable to the Trustee in the unfettered exercise of his discretion, subject only to the limitation that the gross combined commission (payable to the brokers for both the seller and buyer) shall not exceed 6% for any such Bello Property. The listing agreement and any sale agreement for each of the Bello Properties shall require the signature of the Trustee to be effective. The Bello Defendants and the Trustee agree that the initial listing prices for the properties shall be: (i) $9,700,000.00 for the BFV Property (unfurnished); (ii) $3,200,000.00 for the BFV Tasting Room (unfurnished); and (iii) $294,000.00 for the Palm Desert Residence (furnished). The Bello Properties shall be sold for such amounts and on such terms and conditions as may be acceptable to the Trustee in the unfettered exercise of his discretion on an all cash basis to the seller; the Trustee reserves the right to adjust the listing prices for the Bello Properties in the unfettered exercise of his discretion. The Trustee and the Bello Defendants shall each disclose in writing by email to the other Party all offers to purchase a Bello Property within two business days after receipt of such offer. The Bello Defendants, jointly and severally, agree that if any Bello Defendant receives an offer to purchase any Bello Property he/she/it shall forthwith refer all such potential purchasers to the listing broker and shall not attempt to enter into or participate in any discussions or negotiations to sell such property without the Trustee's prior written consent.

    4.    **Bello Defendants' Obligations re Intended Nonexclusive Sources of**

5

**Settlement Consideration**

The Bello Defendants, jointly and severally and at all times through and including the date of the closing of the sale of the Bello Properties, shall: **(i)** insure each such property from and against all casualty loss in an amount at least equal to 90% of the listing price for such property; **(ii)** pay all real estate taxes and assessments not already in default as and when such taxes and assessments become due and payable so as not to allow such obligations to be in default with respect to such property; **(iii)** maintain and preserve such property in accordance with their reasonable past practices and pay all such maintenance and preservation costs as they become due and payable so as not to allow such obligations to be in default; **(iv)** maintain all usual and customary utilities for such property in accordance with their reasonable past practices and pay all such utilities costs as they become due and payable so as not to allow such obligations to be in default; **(v)** not permit or suffer any waste to occur on or to such property, any improvements thereto, or any crops or horticultural features located thereon; and **(vi)** not permit or suffer any liens or other encumbrances to be recorded against such property, which liens and encumbrances were not recorded prior to May 1, 2015 (other than for real property taxes and assessments not yet due and payable).

5.     **Grant of Power of Attorney Coupled with an Interest in Favor of the Trustee**

Subject only to the commission limitation set forth in ¶ 3.b above, the Bello Defendants, and each of them, hereby grant the Trustee an irrevocable power of attorney coupled with an interest in the BFV Property, the BFV Tasting Room and the Palm Desert Residence to list, advertise, show, offer for sale, sell and execute, cause to be acknowledged and deliver such documents and instruments as the Trustee, in the exercise of his unfettered discretion, deems necessary or appropriate to convey grant deed title to and transfer the right to possession of each of such properties, in each case on such terms and conditions as shall be acceptable to the Trustee in the unfettered exercise of his discretion on an all cash basis to the seller. **The Bello Defendants each further acknowledge, covenant and agree that the grant of this power of attorney coupled with an interest does not create any fiduciary duties by the Trustee to any of the Bello Defendants and that the Trustee's sole obligation hereunder is the performance of the terms and conditions of this Settlement Agreement for the benefit of the Liquidation Trust.**

6

### 6. Bello Defendants' Settlement Payments

As consideration for the Trustee's release of the Liquidation Trust's claims against the Bello Defendants, and each of them, as alleged in the Complaint:

a. The Bello Defendants shall pay, in the following sequence:

(i) To the Trustee, the sum of **$825,000.00, plus accrued interest thereon**, currently held by the Clerk of the Bankruptcy Court (Los Angeles Division) pursuant to the *Order on Motion to Obtain Approval to Sell Certain Real Properties and Close Escrow on May 15, 2014* entered June 23, 2014 [Adversary Docket No. 212]. Such sum shall be paid forthwith by the Clerk of the Bankruptcy Court to the Trustee upon the Approval Order becoming a Final Order;

(ii) To the Trustee, the additional sum of **$200,000.00**, for Michael Bello's sale (through RUI) of real property located at 100 S. Hamilton Street, Chandler, Arizona in violation of the Bankruptcy Court's *Preliminary Injunction Order* entered April 7, 2014 [Adversary Docket No. 149], $183,644.95 of which is a coercive sanction which Michael Bello and RUI, jointly and severally, are required to pay by July 13, 2015 pursuant to the Bankruptcy Court's *Contempt Order Against Michael Bello and RU Investments, LLC* (the "Contempt Order") [Adversary Docket No. 424]. This sum shall be paid in full forthwith through escrow to the Trustee upon the closing of the sale(s) of the Bello Properties before any sums are paid to the Bello Defendants;

(iii) To the Trustee's counsel Landau Gottfried & Berger LLP, the additional sum of **$10,288.00** in compensatory sanctions for the Trustee's expense incurred in bringing the *Motion for Issuance of an Order to Show Cause re: Civil Contempt* [see Adversary Docket No. 419], which Michael Bello and RUI, jointly and severally, are required to pay pursuant to the Contempt Order. This sum shall be paid in full forthwith through escrow to the Trustee's counsel Landau Gottfried & Berger LLP upon the closing of the sale(s) of the Bello Properties before any sums are paid to the Bello Defendants;

(iv) To the Trustee (subject to the final sentence of this ¶ 6.a.(iv)), the additional sum equal to **$4,000,000.00**. This sum shall be paid in full forthwith through escrow to the Trustee upon the closing of the sale(s) of the Bello Properties before any sums are paid to the Bello Defendants. Upon the sale of the BFV Property, and prior to the payment due the Trustee upon the sale of such property, Premier Trust shall be paid forthwith though escrow all

7

amounts owed to it as trustee before any sums are paid to the Bello Defendants;

(v) To the Trustee, the additional sum of $875,700.00. The Trustee and the Bello Defendants agree that this amount is equal to 70% of the current estimated fair market value of, net of the estimated outstanding amount owned on first trust deeds against, (A) 1758 Spring Street, St. Helena, California (the "Spring Street Residence"), owned of record by Christopher Bello, a married man, as his sole and separate property. Estimated fair market value: $1,775,000.00; estimated outstanding secured loan at Wells Fargo Bank: $759,000.00; and (B) 608½ Begonia Avenue, Corona Del Mar, California (the "Begonia Avenue Residence"), owned of record by MBI. Estimated fair market value: $1,275,000.00; estimated outstanding secured loan at Wells Fargo Bank: $1,040,000.00. This sum shall be paid in full forthwith through escrow to the Trustee upon the closing of the sale(s) of the Bello Properties before any sums are paid to the Bello Defendants;

(vi) To the Trustee, **the additional sum equal to 70% of any and all past due mortgage payments, including interest, late fees, penalties and mortgage holder costs incurred (including legal fees), real estate taxes or assessments paid upon the closing of the sale(s) of the Bello Properties.** This sum shall be paid in full forthwith through escrow to the Trustee upon the closing of the sale(s) of the Bello Properties before any sums are paid to the Bello Defendants;

(vii) If the proceeds of the sale of the Bello Properties are sufficient to pay the Trustee the aggregate amount set forth in ¶¶ 6.a.(ii)-(vi) above and any sum payable to the Trustee pursuant to ¶ 6.b below, all remaining net proceeds of such sales shall be paid 70% to the Trustee and 30% to the Bello Defendants. If the proceeds of the sale of the Bello Properties are not sufficient to pay the Trustee the aggregate amount set forth in ¶¶ 6.a.(ii)-(vi) above and any sum payable to the Trustee pursuant to ¶ 6.b below, the Bello Defendants, jointly and severally, shall pay the net amount remaining owing to the Trustee within 30 calendar days after the date of the closing of the sale of the last of the three Bello Properties.

b.  The Bello Defendants shall pay the Trustee an additional sum equal to 70% of the agreed upon forced sale value of the personal property owned by the Bello Defendants and listed on **Exhibit 4** to this Settlement Agreement. In such event, that amount shall be added to and paid pursuant to ¶ 6.a.(v) above. If the Bello Defendants and the Trustee are not able to agree upon such forced sale value of any such personal property prior to the Approval Order

8